UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CRIMINAL NO. 04-10292-NG

UNITED STATES OF AMERICA

V.

JOSE TORRES, a/k/a Jesus Rodriguez

Defendant

**DEFENDANT'S SENTENCING MEMORANDUM**

The defendant respectfully submits this Sentencing Memorandum as an aid to the Court in determining an appropriate sentence in this matter. The defendant pled guilty to a two count indictment on June 29, 2005 charging him with being a felon in possession of a firearm and ammunition in violation of 18 U.S.C. §922(g)(1), (Count I) and distribution of a small amount of heroin in violation of 21 U.S.C. §841 (a)(1), (Count II).

The imposition of a sentence based solely on the United States Sentencing Guidelines is no longer obligatory. United States v. Booker, 543 U.S. ___, 125 S.Ct. 738, 757 (2005). A guidelines-based sentence is now but one of several factors which a court must consider in arriving at a particular sentence. Id. The primary objective in sentencing under federal criminal law is for the court to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph 2.", of 18 U.S.C. §3553(a). Id. 18 U.S.C. §3553(a)(2) states the purposes of sentencing in the federal criminal justice system. These are: the need for the sentence imposed,

   1) to reflect the seriousness of the offense,

   2) to promote respect for the law,

   3) to provide just punishment for the offense

   4) to afford adequate deterrence to criminal conduct,

   5) to protect the public from possible further crimes of the defendant, and

   6) to provide the defendant with needed education or training, medical care, or

      other correctional treatment in an effective manner.

18 U.S.C. §3553(a)(2)

The court also must consider the nature and circumstances of the offense and the history and characteristics of the defendant, §3553(a)(1), the kinds of sentences available, Id. at (3), the applicable Guidelines sentence and pertinent policy statements, Id. at (4) and (5), the need to avoid disparity in sentencing similar defendants for similar offenses, Id. at (6), and the need, if any, to provide restitution to victims of the offense. Id. at (7).

## Recommended Appropriate Sentence

The defendant submits that an appropriate sentence in this case, for the reasons stated below, would be time served (363 days as of October 11, 2005), and additional community confinement in an extended residential drug treatment facility until completion of any designated program therein, followed by a period of supervised release on conditions to be determined by this Court.

**Nature and History of the Offense**

The defendant sold two firearms, a Marlin Model 60 .22 caliber rifle and a Mossberg Model 500A 12 gauge shotgun and 49 rounds of ammunition, along with a single small plastic baggie of heroin to an undercover co-operating witness on March 8, 2004 in New Bedford, MA. Presentence Report ("PSR"), (9), (10).

**History and Characteristics of the Defendant**

The defendant is 46 years old. He was born and raised in Puerto Rico. He is the oldest of seven children born to Santiago Rodriguez and Maria Cristina Garcia de Rodriguez, who are both now approximately 70 years old, still married, retired and living together in Puerto Rico.
One sister died of AIDS. Of his remaining siblings two reside in Puerto Rico, one in New York and two in Massachusetts. His father was a tenant farmer and the family lived in employer-provided housing until the defendant was 14 years old. At that time, his father purchased a small piece of land in Carolina, Puerto Rico and built a house for the family. The defendant dropped out of high school without graduating at age 18. He worked as a landscaper and auto mechanic. PSR (59) - (60), (62) - (69).

He came to Connecticut and worked on a tobacco farm for two years. He returned to Puerto Rico and his work as an auto mechanic. PSR (61). By approximately 1981 he was back in the United States, living in Philadelphia, Pennsylvania. PSR Objection #11, p. 28, where he worked for several years in a factory which manufactured automobile braking systems.

Id. He moved to Massachusetts sometime between 1984 and 1987, after being in a relationship with a woman for several years which produced two children, Jesus, Jr. and Yahaira, both now in their early twenties. PSR (73). Their mother, Carmen Llanos, died of complications related to AIDS sometime in the late 1980s or early 1990s and the children were placed in foster care in Pennsylvania. Id. The defendant began a relationship with Elsa Maldonado in approximately 1989 in New Bedford, Massachusetts. Maldonado Affidavit, ¶ 2. They lived together until approximately 2002. Id. ¶16. They married in approximately 1997 and Elsa obtained a divorce from Jesus in 2005. Id. ¶ 17.

From approximately 1994 until late 2002 the defendant was employed at various jobs, usually for several years at a time, as a landscaper in Middleboro, Massahcusetts, a seasonal laborer at Edgewood Trust, Carver, MA, a cranberry production co-operative, PSR (91) - (93), and a factory worker/delivery man at Ecin Industries, 71 Weaver Street, Fall River, MA, a mattress company. Id. at (94); see also Maldonado Affidavit, ¶ 10, and Affidaivit of Luis Rodriguez, the defendant's brother, filed herewith ("Rodriguez Affidavit"), ¶ 8. From his arrival in Massachusetts sometime between 1984 and 1987 until his imprisonment on state charges in May, 2004 the defendant always supplemented any formal employment by also working as a self-employed auto mechanic and furniture upholstery. Maldonado Affidavit, ¶ 18, and Rodriguez Affidavit, ¶ 7.

The defendant has been addicted to heroin since he was about 18 years old. PSR (83). He began using it three or four times per week with friends in Puerto Rico. At his worst, in the early and late 1990s as well as 2003 - 2004, he was using heroin 3 to 4 times or 1.5 to 2 grams per day at a cost of $300 to $400. Id. He also used cocaine "whenever it was around." Id. at (82). He did make repeated significant efforts to conquer his addiction. He met his ex-wife, Elsa, who was at the time a recovering heroin abuser herself, in 1989 when he first seriously tried to do something about his habit. Maldonado Affidavit, ¶¶ 2, 5. Her best recollection is that he went to the detoxification program at Sstar Treatment in Fall River on two or three occasions in the early 1990s. Id. at ¶ 7. She corroborates his completion of the three week in-patient drug rehabilitation program at High Point in Plymouth, MA, also in the early 1990s. Id. at ¶ 9. She lived through his heroic though futile attempt at self-help when he locked himself in their apartment and abruptly went "cold turkey" from any heroin use for 6 or 7 days sometime during the period 1992 - 1995, only to succumb to the resulting pain and craving and return to the streets and the drug anew. Id. at ¶8. She confirms his extensive participation in the High Point out-patient methadone program in New Bedford for several years, including 1994 through 1997 when, she attests, he was working steadily at the mattress factory, contributing financially to the household expenses, also paying child support and generally behaving in a very adult, responsible

way. Id. at ¶¶ 10 - 12. Those years, she admits, were the best the couple shared together. Id. at ¶ 12. The defendant was able to re-connect with his young children in Pennsylvania. His son came to visit him in Massachusetts on several occasions and he even tried to gain custody of his daughter, Yahaira. Id. at ¶¶ 13 - 14; Rodriguez Affidavit, ¶ 9.

Beginning again in approximately the late 1990s or early in 2000 - 2001, however, the defendant relapsed and began using heroin again extensively. Id. at ¶ 15. The situation at home deteriorated rapidly and by August, 2002 Elsa had moved out and was applying for a restraining order to keep the defendant away from her and her place of employment and school. Id. at ¶ 16.

**The Defendant's Criminal History**

The defendant's criminal history approximately tracks his active periods of virulent heroin addiction. He was convicted of two drug felonies for intent to distribute and distribution under Massachusetts state law in 1993 based on two offenses committed during the same week in August, 1992. PSR (45), (46). Both incidents involved a small amount of the drug. Id. It was during this time frame that the defendant completed several brief treatments for detoxification at Sstar Treatment in Fall River apparently without any significant after-care programs or plans. See Maldonado Affidavit, ¶ 7. The predictable sequel was a return to increased heroin use with an attendant need for more money to support his habit. He apparently sought the extra cash by dealing in small amounts of the drug himself. Hence, his arrests in August, 1992.

In 1993 he successfully completed the three week in-patient rehabilitation program at High Point in Plymouth, MA. PSR, (84). He received concurrent suspended sentences for the 1992 offenses on January 12, 1994. PSR (45), (46). From 1994 to 1997 he apparently did well in the methadone program and was gainfully employed on a full-time basis at the mattress factory. He had no more involvement with the criminal justice system until 2002. In August, 2002 his wife left him for, *inter alia,* his return to using heroin. Maldonado Affidavit, ¶ 16; PSR, (72). In December, 2002 his employment at Edgewood Trust ended. PSR, (92). On October 9, 2003 the defendant was arrested for possession of heroin. PSR (48). On February 14, 2004 he was arrested for distribution of heroin to another user which transaction was observed by a nearby police officer. Id. (49).

**The Recommended Guidelines Sentencing Range**

The parties agree that the guidelines sentencing range, 46 to 57 months, indicated in the PSR at (100) is correct. There is no need for restitution. PSR (114). The defendant is eligible for probation if sentenced outside the guidelines. PSR (107).

**The Purposes of §3553(a)(2)-Will be Adequately Fulfilled by the Recommended Sentence**

18 U.S.C §3553((a)(2) states the purposes of sentencing in the federal criminal justice system. These are: the need for the sentence imposed,

1) to reflect the seriousness of the offense,

2) to promote respect for the law,

3) to provide just punishment for the offense

4) to afford adequate deterrence to criminal conduct,

5) to protect the public from possible further crimes of the defendant, and

6) to provide the defendant with needed education or training, medical care, or

other correctional treatment in an effective manner.

18 U.S.C. §3553(a)(2).

A sentence of one year imprisonment (approximately time served) and subsequent commitment to an appropriate in-patient drug rehabilitation program in the community will fulfill all the purposes of sentencing contained in §3553(a)(2). The defendant has had a serious heroin addiction for many years. It has waxed and waned according to the strength of his will, the level of his understanding of his deep-seated problem and, most importantly, his apparent inability to acknowledge both its devastating destructiveness and the impossibility of managing it without extensive support.

His criminal conduct has been almost exclusively the product of his addiction. The instant offenses, while obviously serious ones, are likely relatively minor compared to the majority of drug/gun cases that come before this Court. The defendant is a kind of drug-dependent ne'er-do-well often found on the streets. He will do whatever is necessary to obtain that next fix to appease and mollify what at the time must seem an uncontrollable and undeniable demand of body and mind to yet again get high. If that means selling small amounts of drugs in order to pay for that next hit, he will do it. If it means selling guns he gained access to only heaven knows where, he will sell them. If the government gives him the opportunity to commit these offenses at a time when his addiction is raging, he will willingly take advantage of that. Every time. That is not to say that he does not have the pre-existing tendency, when on a heroin-addled spree, to commit such offenses. He does. And that is not to say that his being under the influence at such times is an excuse or a justification. It is not. But the fact remains that he is a heroin <u>Addict</u> with a capital "A". That is what such people do. It is entirely predictable. There was one sale in this case.

There could just as easily have been tea sales. The defendant would have complied every time if a habit was desperate enough. It is like shooting fish in a barrel.

Yet the public does need to be protected from addicts like the defendant. Their addiction does have serious collateral consequences for their own communities as well as for the nation at large. And some component of real punishment is necessary, i.e. jail time. But just as one orchestrated distribution count and one firearm count sufficed to make the defendant's conduct a federal case, so one year in prison should be a sufficiently harsh punitive consequence for the same conduct. What is needed besides that retribution, however, is a grain of mercy and compassion. This man needs, desperately needs, a comprehensive, round-the-clock, constructive but demanding regimen in a protected, restricted, professionally competent environment, which will once and for all give him the most realistic and best chance to finally overcome his recalcitrant addiction. He is almost 47 years old. He has lost everything, wife, children, work, home and, perhaps, his health, to this scourge. It is likely that his advanced age and the wreckage of his past will make him now more susceptible than ever to rehabilitation. These cumulative realities may begin now to somewhat decrease the desire to pick up the drug and risk re-living the nightmare. This too argues in favor of treatment, not more punishment, at this time.

## Conclusion

For the reasons stated above, the defendant respectfully requests this Court to sentence him to time served with subsequent probation or supervised release, as applicable, mandatory participation in a designated in-patient drug rehabilitation program and for such further conditions as the Court deems meet and just.

Respectfully submitted,
**Jose Torres, t/n Jesus Rodriguez,**
By his attorney,


S/
Raymond E. Gillespie
BBO #192300
875 Massachusetts Avenue
Suite 32
Cambridge, MA 02139
(617) 661-3222


sentmem